UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, | C.A. No. 04-11970 DPW |
| Plaintiffs | |
| vs. | |
| A.C. ELECTRICAL SYSTEMS, INC., Defendant | |
| and | |
| SOVEREIGN BANK, Trustee | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

This is an action brought to collect contributions due employee benefit funds under the terms of a collective bargaining agreement. Plaintiffs (hereinafter "the Funds") are employee benefit plans. Defendant A.C. Electrical Systems, Inc. (hereinafter "A.C. Electrical") is a Rhode

Island corporation. The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

At this juncture, plaintiffs are before the Court on a Motion for Preliminary Injunction. Plaintiffs seek an order compelling A.C. Electrical to permit plaintiffs to audit its payroll-related books and records to determine what amounts are due.

## II. **STATEMENT OF FACTS**

A.C. Electrical is bound by the terms of the Letter of Assent authorizing the Boston Chapter, NECA as its collective bargaining representative for all matters contained in, or pertaining to, the then current and any subsequent collective bargaining agreements between Boston Chapter, NECA and Local Union, 103, I.B.E.W. The Letter of Assent is attached to the Complaint as Exhibit A. A.C. Electrical is also bound by the successive collective bargaining agreements to which it is signatory, including the Agreement which was effective from September 1, 2000 through August 31, 2003 (hereinafter "Agreement"), the relevant pages of which are attached to the Complaint as Exhibit B.

The Agreement requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees. The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Employers are also required to file monthly remittance reports, on which employers calculate the payments they owe. See Affidavit of Russell Sheehan ("Sheehan Aff."), par. 2.

A.C. Electrical has failed to submit payroll reports to the Funds for work performed since February, 2004 or to forward the dues that it has deducted from its employees' wages. Sheehan Aff., par. 4. Counsel for the Funds sent certified letters to A.C. Electrical dated April 28 and June 16, 2004, notifying it of its unpaid contributions beginning in February, 2004. Copies of those letters are attached to the Complaint as Exhibit D. To date, A.C. Electrical has failed and refused to pay the unliquidated amount in contributions and interest due.

Section 4.9 of the Agreement requires employers that become delinquent in their trust fund contributions to furnish employment records and a current list of projects, including the names and addresses of the owner, manager, general contractor and or subcontractor for whom it has worked. Section 6.38(g) of the Agreement further provides that upon request, the parties thereto shall be allowed to examine the employer's payroll records. See Complaint, Exhibit B; Sheehan Aff., par. 3.

On September 1, 2004, counsel for the Funds sent a certified letter to A.C. Electrical requesting that an audit be scheduled immediately and that the amounts due and owing be paid. A copy of this letter is attached to the Complaint as Exhibit D. This audit is necessary to ascertain both the extent of A.C. Electrical's liability to the Funds and the identities of its employees so that they may receive credit for benefits for the hours worked. A.C. Electrical has failed and refused to respond to the audit demands. Sheehan Aff., par. 5.

### III. ARGUMENT

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete"). A motion for preliminary injunction is addressed to the sound discretion of the court. LeBeau v. Spirito, 703

F.2d 639, 642 (1st Cir. 1983). The standard to be used by the district court in ruling on a motion for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld", Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and 4) the effect on the public interest of a grant or denial of the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990); Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that plaintiffs are entitled to the relief requested.

### 1)   **Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately, supra, 2 F.3d at 1225, citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The exhibits and affidavits on file establish that plaintiffs will prevail on the merits.

A.C. Electrical is bound by the Agreement to permit plaintiffs to audit its books and records. Section 4.9 of the Agreement requires employers that become delinquent in their trust fund contributions to furnish employment records and a current list of projects, including the names and addresses of the owner, manager, general contractor and or subcontractor for whom it has worked. Section 6.38(g) of the Agreement further provides that upon request, the parties thereto shall be allowed to examine the employer's payroll records. The Funds' access to the books and records of A.C. Electrical is required to determine the extent of the employer's

4

delinquency and to ensure A.C. Electrical's compliance with the terms of the Agreement, and thus is required for the sound and efficient operation of the Funds.

The United States Supreme Court and this Court have held that trustees of employee benefit funds have the right under ERISA to audit an employer's books and records to determine whether the employer is in compliance with its obligations. See, Central States Southeast and Southwest Areas Pension Fund, et al, Petitioners v. Central Transport, Inc., et al, 472 U.S. 559 (1985) (trustees of multi-employer employee benefit plans covered by ERISA have power under trust document to examine pertinent records of each employer).

A.C. Electrical has refused to permit an audit of its pertinent books and records for the period from February, 2004 through the present and, unless enjoined by this Court, there is every likelihood that it will continue to dishonor its obligations to the Funds and the employees.

### 2) **Irreparable Harm**

A.C. Electrical's refusal to permit an audit renders the Funds unable to fully satisfy their fiduciary and statutory obligations to the Funds' beneficiaries and participants. "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571. The Funds are entitled to contributions for all work performed by A.C. Electrical's employees. Sheehan Aff., par. 2. By refusing to permit an audit, A.C. Electrical denies plaintiffs the opportunity to ascertain the extent of this delinquency, and, by extension, to collect all contributions that A.C. Electrical owes the Funds. See generally Central Transport, supra. It also denies A.C. Electrical's employees the opportunity to receive credit for all work performed.

### 3) **Balancing of Harms**

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the

5

injunction will cause defendants.'" Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. 1987) (emphasis in original).

No harm can come to the employer by being required to do that which the law commands it to do. The demonstrated harm to plaintiffs far outweighs any harm to defendant.

### 4) **Public Interest**

Congress declared it to be the policy of ERISA to "protect . . . the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b). The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. The intent of the committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." Northwest Concrete, supra, at 1352. "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." A & G, citing Northwest Concrete, supra, at 1352. The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

## IV.  CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully submit that their Motion for Preliminary Injunction should be granted.

Respectfully submitted,

RUSSELL F. SHEEHAN, as he is
ADMINISTRATOR, ELECTRICAL
WORKERS' HEALTH AND WELFARE
FUND, LOCAL 103, I.B.E.W., et al,

By their attorneys,

_____
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street, Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  December 14, 2004

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction has been served by first class mail upon the defendant's counsel Dante J. Giammarco, at Visconti and Boren Ltd., 55 Dorrance Street, Providence, RI  02903 this 14th day of December, 2004.

_____
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3013 02-386/memosupmotinj.doc